UNITED STATES of America,
Plaintiff–Appellee,

v.

Sam MERIT, Defendant–Appellant.

No. 91–10049.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1992.

Decided April 23, 1992.

Atmore L. Baggot, Phoenix, Ariz., for defendant-appellant.

Sara Criscitelli, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before: CHOY, FARRIS and RYMER, Circuit Judges.

RYMER, Circuit Judge:

In 1987, Sam Merit and five co-defendants were indicted on one count of wire fraud (18 U.S.C. § 1343), ten counts of interstate transportation of a victim of fraud (18 U.S.C. § 2314), one count of fraud in the sale of securities (15 U.S.C. § 77q), one count of sale of unregistered securities (15 U.S.C. § 77e), and one count of conspiracy to commit offenses against the United States (18 U.S.C. § 371), in connection with a fraudulent gold-mining operation in Arizona. Merit appeals his convictions on count 1 (wire fraud) and count 14 (conspiracy), claiming that his 1988 extradition from the Republic of South Africa was unlawfully obtained.

In granting the United States' extradition request, the Republic of South Africa failed to issue a formal warrant of extradition. Because a warrant never issued, Merit argues that 18 U.S.C. § 3192 barred the exercise of in personam jurisdiction by the district court. Merit also contends that the district court lacked jurisdiction because the acts alleged in the indictment do not constitute crimes in both the United States and South Africa as required by the principle of dual criminality, embodied in this country's treaty of extradition with the (then) Union of South Africa. Treaty of Extradition, Dec. 18, 1947, U.S.–S.Afr., 2 U.S.T. 884. Finally, Merit contends that the district court, in violation of the principle of specialty also embodied in the 1947 treaty, ignored limitations placed by the South African Supreme Court upon the extraditable offenses. Because Merit's extradition was obtained with the full cooperation of the South African government and violated neither the principle of dual criminality nor the principle of specialty, we affirm his convictions.

I

The defendants in this case of "penny stock" fraud were shareholders and directors of Tracon International, Inc., a Nevada corporation with no assets and offices in Phoenix, Arizona. Merit was the controlling shareholder. In July of 1983, Tracon issued a press release announcing the acquisition of oil and gas leases in Illinois and plans to begin mining a newly-acquired gold mine in Arizona. Shortly thereafter, Tracon began trading its stock in the over-the-counter market.

The defendants were charged in the District of Arizona with a scheme to defraud investors through the sale of Tracon common stock. In particular, the indictment charged that the defendants operated Tracon as a sham corporation, leased mining claims and mining equipment in Arizona to give the false appearance of a successful gold-mining operation, failed to register Tracon stock, and fraudulently induced potential investors to travel to Arizona and invest in Tracon.

After this and a similar Texas indictment were returned against him, Merit fled to South Africa. At the request of the United States government, a South African magistrate committed Merit to prison to await the decision of the South African Minister of Justice on the request for Merit's extradition. The Supreme Court of South Africa subsequently upheld extradition for the charges in both the Arizona and Texas indictments. *In re Sam Merit & Gov't of U.S.A.*, No. A.183/88, slip op. at 21 (S.Afr.Sup.Ct. March 3, 1988).

Although Merit was indicted in the District of Arizona on all fourteen counts, he was found extraditable by the Supreme Court of South Africa only on counts 1 (wire fraud) and 14 (conspiracy). *Id.* ("If the [U.S. government's] deponents ... are to be believed, as they must be at this stage, then even with [Merit's] denial a prima facie case at least remains proved against [Merit] on ... counts 1 and 14 of the indictment handed down by the Arizona Grand Jury...."). The South African Ministry of Justice subsequently surrendered Merit to the United States authorities without issuing a formal warrant of extradition. Upon his return to the United States, Merit was convicted solely on the two counts specified by the South African Supreme Court.[1]

■ Merit now challenges his extradition, claiming that the failure to issue a warrant rendered his extradition invalid and that the extradition otherwise violated the principles of dual criminality and specialty observed by the U.S.–South Africa extradition treaty. We review de novo questions regarding interpretation of, and jurisdiction under, the treaty, including compliance with dual criminality and specialty requirements. *See United States v.*

*Verdugo–Urquidez*, 939 F.2d 1341, 1344 (9th Cir.1991) (petition for certiorari filed Oct. 21, 1991); *Theron v. United States Marshal*, 832 F.2d 492, 496 (9th Cir.1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988); *United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir.1987), *cert. denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

## II

■ Merit relies on the fact that South Africa chose to extradite him without issuing a formal warrant of extradition. Although the 1947 extradition treaty does not require a formal warrant, Merit claims that his extradition was nonetheless invalid without one. First, Merit argues that the United States interfered with the South African executive's prerogative to extradite. Citing several cases for the proposition that the final decision to extradite—both in the United States and South Africa—lies with the executive, Merit claims that the decision of the South African Minister of Justice to issue a warrant "never occurred probably because our government prematurely caused the removal of appellant from his detention in Johannesburg." Yet there is no evidence which indicates that the United States extradited Merit without the permission of the Republic. Moreover, the following statements made by the government in its "Report Regarding Extradition of Defendant Merit" are uncontradicted:

Under Article 7 of the [1947 treaty,] the requesting country can try an extraditee on those charges found extraditable by the asylum country.... Because Merit was extradited pursuant to the Treaty, the terms of Article 7 are applica-

1. Merit was also eventually convicted in the Northern District of Texas of conspiracy to commit mail, wire, and securities fraud and to make false statements on loan applications in violation of 18 U.S.C. § 371, and of making false statements to federally insured banks in violation of 18 U.S.C. §§ 1014 and 2. One of his codefendants in this case, Oded Benary, was also convicted of mail and wire fraud violations in the Texas case. The Texas prosecution arose out of the defendants' dealings with a company

called Frontier Resources Corporation that had fraudulently misrepresented the productivity of certain oil and gas leases it had acquired in Texas.

In an unpublished opinion, the Fifth Circuit affirmed Merit's and Benary's convictions. *See United States v. Merit*, No. 89–1490, slip op. at 2 (5th Cir. May 13, 1991) [933 F.2d 1003 (Table) ]. The Fifth Circuit rejected Merit's extradition arguments, which were similar to the ones made in this case. *See id.* at 8–9.

ble to him in this matter. When Merit was extradited, however, the government of South Africa did not provide a surrender warrant or other written communication setting forth the charges on which Merit had been extradited.

Because of this lack of information, the United States sought clarification as to such charges. In response, the South African government notified the United States Embassy in June 1988 that the charges on which Merit is triable are those mentioned in the judgment rendered by the South African [Supreme C]ourt on Merit's extradition appeal.

Our reading of that judgment ... found that the South African [Supreme C]ourt was specific as to some counts, namely, Counts 1 and 14 of the Indictment in this case, ... but was ambiguous about other counts. Thus we sought further clarification from the South African authorities.

The United States Embassy in South Africa advised us by memorandum ... dated September 15, 1988, that the South African Department [sic] of Justice in late August confirmed that the charges listed in the preceding paragraph are the charges for which Merit was extradited and therefore on which he is triable.

Given this record, there is no basis for concluding that the Republic was not consulted about the scope and legality of Merit's extradition.

■ Merit next points to 18 U.S.C. § 3192, which he claims requires the issuance of a formal warrant by the asylum country as a jurisdictional prerequisite. 18 U.S.C. § 3192 reads:

> Whenever any person is delivered by any foreign government to an agent of the United States, for the purpose of being brought within the United States and tried for any offense of which he is duly accused, the President shall have the power to take all necessary measures for the transportation and safekeeping of such accused person, and for his security against lawless violence, until the final conclusion of his trial for the offenses specified in the warrant of extradition, and until his final discharge from custody or imprisonment for or on account of such offenses....

Although the statute refers to a warrant of extradition, it does not require one as a jurisdictional prerequisite. Nor does Merit cite any authority indicating that the absence of a warrant divests a court of jurisdiction over an extraditee. Extradition arrangements serve primarily to protect the interests of the requesting and asylum states, not the interests of the extraditee.[2] Therefore, even if the 1947 treaty required the asylum state to issue a formal warrant, the United States and South Africa were free to agree to extradite Merit "without invoking the formal extradition process," *Verdugo–Urquidez*, 939 F.2d at 1352, and without a warrant.

In *Verdugo–Urquidez*, we noted that extradition

> treaties are in the nature of contracts between nations. Just as a private party may waive a term in a contract that is in the contract for his benefit, so a signatory to an extradition treaty may waive the

---

**2.** This point was made by Professor M. Cherif Bassiouni, who in 1987 wrote:

Extradition is essentially a process of inter-governmental legal assistance in the prosecution and punishment of criminal offenders. The increased concerns for human rights protections expressed either through international conventions, national constitutions, national laws or bilateral extradition treaties have not altered the basic contractual and reciprocal concept that underlies the nature of extradition and its application. The basic substantive requirements of extradition [such as dual criminality and specialty] derive essentially from this conceptual basis of extradition even though observance of these requirements in-

ure to the benefit of the [extraditee], who can claim their application in the national legal system of the requested state. There is no case known to this writer anywhere in the world where a claim made in the requesting state by an extradited person after his return that such requirements have been violated in the requested state has resulted in a ruling in favor of the [extraditee] (and which would have resulted in the invalidation of the extradition and the release of the returned claimant).

M. Cherif Bassiouni, International Extradition: United States Law and Practice 319–20 (2d ed. 1987) [hereinafter "Bassiouni"].

requirement that the other signatory follow the procedures set forth in the treaty. Thus, the fact that there is an extradition treaty between two nations is no bar to one of those nations *voluntarily* surrendering an individual to the other without invocation of the treaty.

*Id.* If the United States and South Africa were free to disregard a treaty provision requiring a warrant had the provision existed, there is no reason why the two countries could not agree to extradite Merit without a warrant in this case. *Cf. United States v. DiTommaso,* 817 F.2d 201, 212 (2d Cir.1987) (18 U.S.C. § 3192 did not invalidate prosecution upon extradition despite lack of warrant). To hold otherwise would lead to the unacceptable conclusion that extradition from a country that does not issue formal surrender warrants is necessarily invalid and the subsequent prosecution necessarily unlawful.

■ Merit also argues that South Africa's Extradition Act No. 67 of 1962 required the Republic's executive to issue a warrant before releasing him. The act of state doctrine, however, precludes examination of the official actions of a foreign sovereign taken within its own jurisdiction. *See, e.g., W.S. Kirkpatrick & Co. v. Environmental Tectonics Corp., Int'l,* 493 U.S. 400, 409, 110 S.Ct. 701, 706–07, 107 L.Ed.2d 816 (1990) ("The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid."); *see also Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 401, 84 S.Ct. 923, 926, 11 L.Ed.2d 804 (1964) ("The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory.").[3] Even if the Republic did disregard its own laws in failing to issue a warrant of extradition, this court cannot question the validity of South Africa's domestic actions.

### III

■ Merit also contends that his extradition violated the dual criminality provisions of the 1947 treaty.[4] Under the principle of dual criminality, an extraditee is subject to extradition only for those offenses that are crimes in both the requesting and asylum countries. *See Theron,* 832 F.2d at 495–96 (interpreting 1947 treaty); *see also* Bassiouni at 324–27. This principle is reflected in Article 5 of the 1947 treaty.[5]

■ Merit argues that because conspiracy is not a separate offense under South African law, count 14 of the indictment does not charge an extraditable offense. Merit also argues that neither the South African Supreme Court nor the Minister of Justice ever made a dual criminality determination. For support, he points to the language in the South African Supreme

---

**3.** In response to the *Sabbatino* decision, Congress created limited exceptions to the act of state doctrine in the so-called Second Hickenlooper (or Sabbatino) Amendment, 22 U.S.C. § 2370(e)(2). None of the exceptions applies in this case, however, and *Sabbatino* remains "the leading authority on the act of state doctrine." *Industrial Inv. Dev. Corp. v. Mitsui & Co.,* 594 F.2d 48, 51 n. 7 (5th Cir.1979), *cert. denied,* 445 U.S. 903, 100 S.Ct. 1078, 63 L.Ed.2d 318 (1980). *See generally* Restatement (Third) of the Foreign Relations Law of the United States §§ 443–44 (1987).

**4.** Although the government argues that Merit lacks standing to protest his extradition as a violation of the treaty, in this circuit "the person extradited may raise whatever objections the rendering country might have." *United States v.*

*Najohn,* 785 F.2d 1420, 1422 (9th Cir.), *cert. denied,* 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986); *see also United States v. Cuevas,* 847 F.2d 1417, 1426 n. 23 (9th Cir.1988) (same), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989).

**5.** The extradition shall not take place if the crime or offence is not indictable in the place where the person claimed is apprehended or if, subsequently to the commission of the crime or offence or the institution of the penal prosecution or the conviction thereon, exemption from prosecution or punishment has been acquired by lapse of time, according to the laws of the High Contracting Party applying or applied to.
Treaty of Extradition, 2 U.S.T. at 889–90.

Court's opinion indicating that the United States had made out a prima facie case against Merit. *In re Sam Merit*, No. A.183/88, slip op. at 21 ("[A] prima facie case at least remains proved against appellant on ... counts 1 and 14 of the indictment."). A full reading of the Court's judgment, however, shows that its decision that a prima facie case had been made was in effect a decision on the merits that Merit was extraditable. As the Court recognized, under South African law its role was to determine whether the magistrate had correctly decided that there was sufficient evidence to put Merit on trial had the offense been committed in the Republic. *Id.* at 4, 7–18;[6] *cf. Benson v. McMahon*, 127 U.S. 457, 463, 8 S.Ct. 1240, 1243, 32 L.Ed. 234 (1888) (Extradition proceedings are "not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted ..., but rather ... for the purpose of determining whether a case is made out which will justify the holding of the accused...."). The South African Supreme Court answered this question in the affirmative when it found that a prima facie case had been made as to counts 1 and 14 of the Arizona indictment.

Moreover, the Court affirmed the magistrate's decision in full recognition of the dual criminality requirements. Article 3 of the 1947 treaty enumerates 31 offenses for which extradition "shall be reciprocally granted." Although the Court did not make an explicit finding that counts 1 and 14 of the Arizona indictment fell within the enumerated offenses of the treaty, it found that the conspiracy charges in the Texas indictment "clearly [alleged] a fraud falling within the ambit of article 3(22) of the treaty," *In re Sam Merit*, No. A.183/88, slip op. at 19, and found that an earlier Arizona indictment (not at issue in this appeal) that charged Merit with subornation of perjury fell "squarely within the

terms of article 3(29) of the Treaty," *id.* at 18. Most importantly, the Court explicitly affirmed the magistrate's commitment of Merit as to counts 1 and 14 of the indictment in this case. *Id.* at 21.

The Court's judgment does not support Merit's assertion that because conspiracy is not a separate offense under South African law, count 14 does not charge an extraditable offense. In considering the conspiracy charges brought against Merit in Texas, Justice Levy stated:

> The Texas indictment charges nine counts against the appellant which include ... conspiracy by appellant and others to use various means of interstate mails, communications and transport to defraud purchasers of ordinary shares in a company controlled by them by representing in communications by letter or by telegraph or by telephone to defraud and to obtain money by false pretenses and to falsely and wilfully overvalue security to obtain a loan upon it. These details in our courts would all be evidence of the crime of fraud. I see no difference in principle between this count of conspiracy as charged by the Grand Jury and how it would be charged by a prosecutor in our courts as a crime of fraud. It is clearly a fraud falling within the ambit of article 3(22) of the treaty.

*Id.* at 18–19.

We have previously held that "[d]ual criminality does not require that an offense in a foreign country have an identical counterpart under the laws of the United States. Rather, dual criminality exists if the 'essential character' of the acts criminalized by the laws of each country are the same and if the laws are 'substantially analogous.'" *Theron*, 832 F.2d at 496 (quoting *Wright v. Henkel*, 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed. 948 (1903)) (citation omitted). As the South African Supreme Court itself noted, there is "no dif-

---

6. The Court quoted § 10(1) of South Africa's Extradition Act No. 67 of 1962:

> If upon consideration of the evidence adduced at the enquiry the magistrate finds that the person brought before him is liable to be surrendered to the foreign State concerned and, in the case where such person is accused of an offence, that there would be sufficient

> reason for putting him on trial for the offence, had it been committed in the Republic, the magistrate shall issue an order committing such person to prison to await the Minister's decision with regard to his surrender, at the same time informing such person that he may within fifteen days appeal against such order to the Supreme Court.

ference in principle" between the Texas conspiracy count, which is very similar to the one in this case, "and how it would be charged by a prosecutor in [South African] courts as a crime of fraud." *In re Sam Merit,* No. A.183/88, slip op. at 19. The Court's analysis satisfies us that the laws at issue here are "substantially analogous," *Theron,* 832 F.2d at 496, and that Merit's extradition was accomplished in full compliance with the principle of dual criminality.[7]

### IV

■ Under the principle of specialty, the United States must limit its prosecution of Merit to those offenses for which he was found extraditable by the asylum country. *See Theron,* 832 F.2d at 496; *see also* Bassiouni at 359–64. This principle is reflected in Article 7 of the 1947 treaty.[8]

Here, there is no question that the United States adhered to the specialty requirements of the treaty. The South African Supreme Court found Merit extraditable on counts 1 and 14 of the indictment. Merit was prosecuted for and convicted of only those counts. Our inquiry into the validity of Merit's extradition ends there.

### V

Merit and three of his co-defendants contend that other errors led to their convictions. None of their arguments has merit, as we hold in an accompanying unpublished memorandum disposition. Merit's convictions are AFFIRMED.

---

7. *Cf.* Bassiouni at 354:

The traditional rule of looking at the underlying facts and the general nature of the charge as the basis of [dual] criminality may not prove helpful in cases such as those involving RICO, CCE or complex SEC violations. A foreign court may therefore have the option of granting extradition for an offense known to its system and which it would deem to be included within the meaning of such offenses as RICO or CCE. In that case, the U.S. could only prosecute the [extraditee] for the particular offense for which the extradition request was made and granted, which will then determine the basis of the extradition order if it contains such specificity.

8. A person surrendered can in no case be kept in custody or be brought to trial in the territories of the High Contracting Party to whom the surrender has been made for any other crime or offence, or on account of any other matters, than those for which the extradition shall have taken place, until he has been restored, or has had an opportunity of returning, to the territories of the High Contracting Party by whom he has been surrendered.

Treaty of Extradition, 2 U.S.T. at 890.