# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 16-4260
No. 16-4448

———————————————

John Graham

*Petitioner - Appellant/Cross Appellee*

v.

Darin Young, Warden

*Respondent - Appellee/Cross Appellant*

———————————————

Appeals from United States District Court
for the District of South Dakota - Sioux Falls

————————

Submitted: October 19, 2017
Filed: March 30, 2018

————————

Before LOKEN, BEAM, and COLLOTON, Circuit Judges.

————————

LOKEN, Circuit Judge.

John Graham was extradited from Canada and then convicted of felony murder in violation of South Dakota Codified Laws §§ 22-16-9 and 22-19-1. The state courts upheld his conviction on direct appeal and denied post-conviction relief. Graham filed a petition for a federal writ of habeas corpus, asserting various claims. See 28

U.S.C. § 2254. The district court[1] denied relief but granted a certificate of appealability on Graham's claim that his conviction violated the "dual criminality" provision of the Treaty on Extradition between the United States of America and Canada (the Treaty) because felony murder is not a crime in Canada. Graham appeals, arguing the state courts lacked jurisdiction because felony murder is not a crime in Canada. The State cross-appeals the district court's ruling that he has standing to challenge this alleged Treaty violation. Reviewing these issues *de novo*, we affirm.

## I. Background

In February 1976, Anna Mae Aquash's body was discovered in a remote area in South Dakota. She had been shot in the head. In 2003, Graham was indicted in federal court under the Indian Major Crimes Act for the premeditated murder of Aquash. See 18 U.S.C. § 1153. The United States requested that Graham be extradited from Canada to be prosecuted on this charge. In 2007, the Court of Appeal for British Columbia affirmed a lower court's decision granting extradition. United States of America v. Graham, 2007 BCCA 345. Graham was extradited from Canada to South Dakota and the federal prosecution began. After extended litigation, we affirmed dismissal of the federal premeditated murder charge because Graham is a Canadian Indian, and the indictment failed to allege his Indian status, as 18 U.S.C. § 1153 requires. United States v. Graham, 572 F.3d 954, 956 (8th Cir. 2009). Graham remained in custody in South Dakota. In 2009, he was indicted by a Pennington County grand jury on state charges of premeditated murder and felony murder, with a predicate felony of kidnapping.

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

Article 2 of the Treaty, as amended, provides that "[e]xtradition shall be granted for conduct which constitutes an offense punishable by the laws of both Contracting Parties by imprisonment or other form of detention for a term exceeding one year or any greater punishment."[2] Article 2 incorporates the international law doctrine of dual criminality -- "an accused can be extradited only if the alleged criminal conduct is considered criminal under the laws of both the surrendering *and* requesting nations." Murphy v. United States, 199 F.3d 599, 602 (2d Cir. 1999) (quotation omitted). Article 12(1) of the Treaty provides that "[a] person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting State for an offense other than that for which extradition has been granted" unless "[t]he requested State has consented to . . . detention, trial, punishment for an offense other than that for which extradition was granted [and] such other offense is covered by Article 2."[3] Article 12(1) incorporates the "rule of specialty" adopted by the Supreme Court in United States v. Rauscher, 119 U.S. 407, 422-23 (1886) -- a defendant may only be tried in the requesting country for the offense for which extradition was granted. As is common, Article 12(1)(iii) also provides that the surrendering country may waive that Treaty limitation.

Before Graham's trial, the United States sent a diplomatic request to Canada for consent to try Graham on both South Dakota charges. In February 2010, the Canadian Minister of Justice replied:

> Consent to Waiver of Specialty
> Article 12(1)(iii) of the *Treaty on Extradition*
> *between Canada and the United States of America*
> *United States of America v. John Graham*

---

[2]Protocol Amending the Treaty on Extradition between Canada and the United States of America, Can.-U.S., art. I, Jan. 11, 1988, 1853 U.N.T.S. 407.

[3]Treaty on Extradition between the United States of America and Canada, Can.-U.S., art. 12(1), Dec. 3, 1971, 27 U.S.T. 983.

Having regard to the request from the United States of America dated December 18, 2009, (Diplomatic Note No. 852) and to the provisions of sub-paragraph 12(1)(iii) of the *Treaty on Extradition between Canada and the United States of America*, I hereby consent to the detention, prosecution and, if he is convicted, punishment of John Graham with respect to the offences which are set forth in the Indictment, No. 09-3953, filed on September 9, 2009, in the Seventh Circuit Court, County of Pennington, namely:

Count 1: Murder while in the Commission of any felony namely kidnapping, in violation of South Dakota Codified Law 22-16-9 and 22-19-1; and

Count 3: Premeditated Murder, in violation of South Dakota Codified Law 22-16-4.

Graham was then tried. The South Dakota jury convicted him of felony murder and acquitted him of premeditated murder. He was sentenced to life in prison. On appeal, he argued the trial court lacked jurisdiction to prosecute him for felony murder because it was a different crime than the premeditated murder charge for which he was extradited. The South Dakota Supreme Court rejected this "rule of specialty" argument based on the explicit Canadian Consent to Waiver of Specialty. State v. Graham, 815 N.W.2d 293, 299-301 (S.D. 2012).

Graham then filed a state court application for post-conviction relief, arguing that his conviction violated the "dual criminality" provision in Article 2 of the Treaty because felony murder is not a crime in Canada. The Seventh Judicial Circuit Court concluded this claim was barred by res judicata because Graham had raised it on direct appeal. Graham sought to appeal *pro se* but the Supreme Court of South Dakota dismissed his motion for a certificate of probable cause because he did not serve a copy on the State, "a prerequisite to the Court's jurisdiction to consider said motion pursuant to SDCL 21-27-18.1."

-4-

Graham then filed this timely petition for a federal writ of habeas corpus.  In the claim at issue, he asserts that the South Dakota trial court lacked jurisdiction to try him because felony murder is not a crime in Canada and therefore is not an extraditable offense under Article 2 of the Treaty.  A federal writ of habeas corpus will issue for a person who is in state custody "in violation of the . . . treaties of the United States."  28 U.S.C. § 2254(a).

## II. Discussion

Graham argues this appeal concerns the doctrine of dual criminality reflected in Article 2, not the rule of specialty reflected in Article 12(1).  But we conclude the dual criminality issue turns on the legal effect of the Consent to Waiver of Specialty that United States diplomatic officials obtained from the Canadian Minister of Justice before Graham was convicted of felony murder in violation of South Dakota law.

Our analysis begins with Graham's rule of specialty argument rejected by the Supreme Court of South Dakota on direct appeal, an issue that he exhausted but did not pursue in his federal habeas corpus petition.  In Rauscher, a defendant extradited from Great Britain for prosecution on a charge of murder in the United States challenged his conviction in this country for a different crime, cruel and unusual punishment.  119 U.S. at 409.  Great Britain had previously claimed that the extradition treaty between Great Britain and the United States incorporated the doctrine of specialty.  Id. at 415-16.  After reviewing the treaty's text and history, international practice, and other relevant authorities, the Supreme Court agreed.  Id. at 420-23.  The Court noted that treaties may "contain provisions which confer certain rights upon the citizens or subjects of one of the nations residing in the territorial limits of the other . . . which are capable of enforcement as between private parties in the courts of the country."  Id. at 418 (quotation omitted).  The Court held that "a person who has been brought within the jurisdiction of the [United States] court, by virtue of proceedings under an extradition treaty, can only be tried for one of the

-5-

offenses described in that treaty, and for the offense with which he is charged in the proceedings for his extradition." The Court concluded that a United States treaty made in accordance with Article II, Section 2 of the Constitution, though brought into being by the executive branch, is made part of "the supreme Law of the Land" by Article VI and may be enforced by the judicial branch. Id. at 430-31.

In rule of specialty cases, we have construed Rauscher as allowing an extradited individual to raise whatever objections to his prosecution the surrendering country might have, so long as "the surrendering state would regard the prosecution at issue as a breach" of the extradition treaty. United States v. Lomeli, 596 F.3d 496, 502 (8th Cir. 2010) (quotation omitted); see Leighnor v. Turner, 884 F.2d 385, 389 (8th Cir. 1989); United States v. Thirion, 813 F.2d 146, 151 (8th Cir. 1987); United States v. Jetter, 722 F.2d 371, 373 (8th Cir. 1983). Some circuits construe Rauscher more narrowly, concluding that a defendant "would only have prudential standing to raise the claim that his sentence violated the terms of his extradition if the [surrendering country] first makes an official protest." United States v. Suarez, 791 F.3d 363, 367 (2d Cir. 2015), cert. denied, 136 S. Ct. 800 (2016). There is a circuit conflict on this issue. See Leighnor, 884 F.2d at 388 n.4 (collecting cases).

Dicta in United States v. Alvarez-Machain, 504 U.S. 655, 667 (1992), noted that, in Rauscher, "no importance was attached to whether or not Great Britain had protested the prosecution of Rauscher for the crime of cruel and unusual punishment as opposed to murder," strongly suggesting that a rule of specialty violation may be raised when the surrendering country has not taken a position. But no case, including the above-cited Eighth Circuit cases, has held that a defendant may obtain relief for an alleged violation of the rule of specialty by a prosecution to which the surrendering country has expressly consented. See United States v. Puentes, 50 F.3d 1567, 1575 (11th Cir.) ("The extradited individual, however, enjoys this right at the sufferance of the requested nation."), cert. denied, 516 U.S. 933 (1995); United States v. Riviere, 924 F.2d 1289, 1292, 1299-1301 (3d Cir. 1991), and cases cited; United

States v. Diwan, 864 F.2d 715, 721 (11th Cir.), cert. denied, 492 U.S. 921 (1989), citing United States v. Najohn, 785 F.2d 1420, 1422 (9th Cir.) ("The extradited party may be tried for a crime other than that for which he was surrendered *if the asylum country consents*."), cert. denied, 479 U.S. 1009 (1986). Thus, in affirming Graham's conviction on direct appeal, the Supreme Court of South Dakota was on sound ground in rejecting his rule of specialty argument based on the Canadian Waiver of Consent to Specialty. See Graham, 815 N.W.2d at 299-301.

Graham alleges that his conviction for felony murder violated the dual criminality limitation in Article 2 of the Treaty. Graham assumes without discussion that we review *de novo* whether felony murder is a crime in Canada, relying on cases in which a person to be extradited *from* the United States argued that the requesting country was not accusing him of a crime in the United States, such as the Canadian request for a perjury prosecution at issue in Kelly v. Griffin, 241 U.S. 6, 13-14 (1916). By contrast, the State cross-appeals the district court's conclusion that Graham has standing to litigate the dual criminality issue. We reject both positions.

Beginning with the State's contention, in our view, the Supreme Court's recent decision in Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014), confirms that this is not a question of standing. Like the Lanham Act claimant in Lexmark, Graham clearly has Article III standing to seek a writ of habeas corpus challenging his ongoing custody for a South Dakota crime. Id. at 1386. Rather, as treaties like statutes are part of the law of the land, the question is whether Graham has what the Court referred to as "statutory standing" because his claim "fall[s] within the zone of interests protected by the law invoked." Id. (quotation omitted). The Court explained that this question, though placed under the rubric of "prudential standing" in past cases, "is an issue that requires us to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." Id. at 1387. Of course, the analysis of statutory rights and treaty rights may differ significantly, but both are

inquiries going to the merits of a plaintiff's claim, not to the plaintiff's "standing" to be in federal court.

Graham's position is even more flawed. His argument is premised entirely on the dual criminality provision. Thus, it would necessarily apply if Canada had initially extradited him to be prosecuted for premeditated murder *and* felony murder. In that case, Graham would be asking a United States court to rule that Canada violated Article 2 of the Treaty by concluding that a United States charge of felony murder was "conduct which constitutes an offense punishable by the laws of" Canada. Such a ruling would be contrary to a basic principle of the act of state doctrine: "the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 416 (1964) (quotation omitted). Thus, it is not surprising that Graham cites no case in which a United States court granted such relief. To the contrary, many cases have held that "the question of whether an extradition treaty allows prosecution for a particular crime that is specified in the extradition request is a matter for the extraditing country to determine." United States v. Campbell, 300 F.3d 202, 209 (2d Cir. 2002), citing Johnson v. Browne, 205 U.S. 309, 316 (1907), cert. denied, 538 U.S. 1049 (2003); see Casey v. Dep't of State, 980 F.2d 1472, 1477 (D.C. Cir. 1992); United States v. Garavito-Garcia, 827 F.3d 242, 247 (2d Cir. 2016). We think the governing principle was well stated in Antwi v. United States, 349 F. Supp. 2d 663, 672 (S.D.N.Y. 2004): "to the extent that a defendant who is extradited to the United States is prosecuted only for the offense for which his extradition was sought, the simple fact of extradition may be deemed a waiver by the requested state of the dual criminality principle." As the Second Circuit explained in Campbell, "deference to [the extraditing] country's decision seems essential to the maintenance of cordial international relations. It could hardly promote harmony to request a grant of extradition and then, after extradition is granted, have the requesting nation take the stance that the extraditing nation was wrong to grant the request." 300 F.3d at 209.

The issue is complicated in this case by the fact that felony murder was not included in the initial extradition request. Rather, Canada expanded the scope of its extradition in a Consent to Waiver of Specialty issued after Graham was extradited. But the governing principle is the same -- we will not sit in judgment of Canada's interpretation of Canadian criminal law as authorizing Canada to extradite Graham under Article 2 of the Treaty for a felony murder prosecution in the United States. Article 12(1)(iii) limited the authority to consent to offenses "covered by Article 2." Thus, in granting the Consent to Waiver of Specialty, the Minister of Justice "necessarily determined that, in the light of the evidence presented, the conduct charged would have violated [Canadian] law (therefore satisfying the element [of dual] criminality) and was also an extraditable offense." United States v. Herbage, 850 F.2d 1463, 1466 (11th Cir. 1988), cert. denied, 489 U.S. 1027 (1989). Graham argues that the Minister of Justice -- a prosecutor -- "has no power to waive Graham's rights" under the Treaty. But the Minister of Justice's authority to issue a Consent to Waiver requested by the United States is an issue of Canadian law that may not be collaterally attacked in this country. See Riviere, 924 F.2d at 1301-02; Diwan, 864 F.2d at 721; Najohn, 785 F.2d at 1423. An oft-cited treatise on extradition has stated:

> There is no case known to this writer anywhere in the world where a claim made in the requesting state by an extradited person after his return that such requirements [dual criminality and specialty] have been violated in the requested state has resulted in a ruling in favor of the [extraditee] (and which would have resulted in the invalidation of the extradition and the release of the returned claimant).

M. Cherif Bassiouni, International Extradition: United States Law & Practice 320 (2d ed. 1987), quoted in United States v. Merit, 962 F.2d 917, 920 n.2 (9th Cir.), cert. denied, 506 U.S. 885 (1992).

We conclude that the Consent to Waiver of Specialty conclusively established that Graham's prosecution and conviction for felony murder in South Dakota did not violate Article 2 of the Treaty on Extradition with Canada. Accordingly, we affirm the judgment of the district court and deny Graham's *pro se* motion.

_____