UNITED STATES of America

v.

Francisco MEDINA, a/k/a "Freddy," a/k/a "Miguel Perez," a/k/a "Raul Polanco," Defendant.

No. S3 94 CR. 872 (SAS).

United States District Court, S.D. New York.

Nov. 18, 1997.

17. The phrase is Bruce Ackerman's. See Bruce Ackerman, *We the People: Foundations (1991).*

Thomas A. Arena, Asst. U.S. Atty., Southern District of New York, New York City, for government.

Labe M. Richman, New York City, for Francisco Medina.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Defendant Francisco Medina has moved to dismiss certain counts of the Indictment filed against him, arguing that the crimes charged in those counts are not extraditable offenses under the Treaty of Extradition between the Dominican Republic and the United States. For the following reasons, the motion is denied.

### I. *Factual Background*

In February 1996, Francisco Medina was charged in a 58–count multi-defendant Indictment. Counts one and two charge him with violations of the RICO statute, 18 U.S.C. § 1962; counts three through 27 and 33 charge Medina with violent crimes in aid of racketeering in violation of 18 U.S.C. § 1959; count 37 charges him with conspiring to violate the narcotics laws in violation of 21 U.S.C. § 841; count 39 charges him with participating in a continuing criminal enterprise in violation of 21 U.S.C. § 848; and counts 40 through 53 charge Medina with carrying and using a firearm during a crime of violence and during a narcotics trafficking crime in violation of 18 U.S.C. § 924(c).[1]

It appears that at or about the time the Indictment was filed, Francisco Medina was residing in his country of origin, the Dominican Republic. On February 26, 1997, the United States Embassy forwarded a Diplomatic Note to the Government of the Dominican Republic requesting the extradition of Medina pursuant to an extradition Treaty ratified by both countries in 1910. *See* Extradition Treaty, August 2, 1910, United States and Dominican Republic, 36 Stat. 2468; T.S. No. 550 ("Extradition Treaty"). The Note requested Medina's extradition "to answer charges of ... conspiracy to possess with intent to distribute heroin; and organiz-

---

1. Counts 54–58 charge other defendants with violating 18 U.S.C. § 924(c).

ing a criminal enterprise (including murder, drug distribution, and conspiracy)." *See* Exhibit C at p. 1 of Defense Exhibits on Extradition ("Ex.").

In May 1997, the United States submitted a formal request to the Government of the Dominican Republic for the extradition of Francisco Medina. Among the documents included in the United States extradition request was a certified copy of the 58–count Indictment. *See* Affidavit of Assistant U.S. Attorney Bruce G. Ohr in Support of Request for Extradition of Francisco Medina, dated May 6, 1997, ("Ohr Aff."). After the United States Embassy sent a second Diplomatic Note, the President of the Dominican Republic issued a decree authorizing the extradition on August 12, 1997 ("Extradition Decree"). *See* Defense Ex.D.[2] That same day, the Government of the Dominican Republic surrendered Medina to United States custody.

## II. *Discussion*

The defendant argues that all but one of the counts in the Indictment should be dismissed because the crimes charged are not extraditable offenses under the Extradition Treaty.[3] The effective Extradition Treaty enumerates those crimes which constitute extraditable offenses. Medina contends that extradition can only be effected for those offenses specifically listed in the Treaty. The crimes enumerated in the Indictment are not listed in the Extradition Treaty; therefore, Medina argues they are not extraditable offenses. Defendant's syllogism fails to consider either how nations interpret extradition treaties or the fundamental con-

cerns addressed by international extradition law. As a result, Medina's challenge to his extradition is without merit.

### A. *Extradition Principles*

■ Medina's challenge implicates three doctrines of international law. While these concepts are closely allied, they are not interchangeable. First, where extradition is sought pursuant to an extradition treaty, the offense must be one made extraditable by the applicable treaty: Namely, the person subject to extradition—the relator—must be charged with an "extraditable offense." *See Spatola v. United States*, 925 F.2d 615, 619 (2d.Cir.1991); *Melia v. United States*, 667 F.2d 300, 304 (2d Cir.1981).[4] A nation determines whether an offense is extraditable in one of two ways: (1) it can require that an offense charged be identical to an offense listed in an extradition treaty; or (2) it can require that the acts supporting the charged offense could also sustain a charge under the laws of the surrendering nation corresponding to an offense listed in the treaty. The second method does not require that the charged offense be identical to the offense listed in the treaty. *See* Bassiouni at 329; *see also Spatola*, 925 F.2d at 619.

United States courts have addressed this issue in situations where the United States was the surrendering nation. Several courts applied the second method in deciding whether or not a crime charged constituted an extraditable offense. *See Artukovic v. Rison*, 784 F.2d 1354 (9th Cir.1986) (war crimes charge was an extraditable offense); *Melia*, 667 F.2d at 304 (procuring murder

---

**2.** The original decree erroneously identified the "New York State Courts" as the jurisdiction in which Medina was to be tried. This was changed by an amended decree, issued on September 23, 1997, which stated that the "correct tribunal" was the "Federal Court for the Southern District of New York."

**3.** Defendant does not challenge his extradition pursuant to Count 37 of the Indictment which charges him with conspiring to violate the narcotics laws.

**4.** In some instances a surrendering state will grant extradition as an act of international comity. *See Factor v. Laubenheimer*, 290 U.S. 276, 287, 54 S.Ct. 191, 193, 78 L.Ed. 315 (1933).

When this occurs there is no extraditable offense requirement because the requesting state does not rely upon a treaty and the requested state can grant or deny the request at its discretion. *See* M. Cherif Bassiouni, *International Extradition: United States Law and Practice*, 326 (2d ed.1987). The United States, however, grants extradition to a requesting state only for extraditable offenses. *See* 18 U.S.C. § 3184; *Demjanjuk v. Petrovsky*, 776 F.2d 571, 579 (6th Cir.1985). United States courts examine whether or not the crimes charged by the requesting state are extraditable offenses pursuant to the implicated extradition treaty. *See Extradition of Matus*, 784 F.Supp. 1052, 1054 (S.D.N.Y.1992).

was an extraditable offense); *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir.1973) (conspiracy to commit a felony, deceit under aggravating circumstances, theft, and conspiracy to commit a felony, were extraditable offenses); *Matus*, 784 F.Supp. at 1056 (VAT fraud was an extraditable offense). In *Melia*, 667 F.2d at 304, the court stated that "[t]he Treaty does not specifically list procuring [murder] as an extraditable offense. We hold, nevertheless, that the Treaty does cover the offense." Additionally, the court in *Ferrandina*, 478 F.2d at 906–907, aptly stated that "Shapiro calls upon us to determine whether the acts charged constitute criminal offenses under the laws of New York. Such a task of ascertaining and, if necessary, interpreting local law is particularly suited to the capacities of the judicial branch."

 A second principle maintains that the extraditable offense must be a serious crime punishable under the criminal laws of both the surrendering and the requesting state. This concept has been termed "dual criminality". *See Lo Duca v. United States*, 93 F.3d 1100, 1111 (2d Cir.1996). Dual criminality does not require that the laws of the surrendering state and the requesting states be identical. Rather, dual criminality is satisfied when the conduct of the accused falls within the proscription of both the requesting and the surrendering state's laws. *See id.* at 1112. "It is enough to satisfy the dual criminality requirement if the particular act charged is criminal in both jurisdictions." *Id.* (citing *Collins v. Loisel*, 259 U.S. 309, 311–12, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922)) (quotations omitted).

 A third concept, referred to as "specialty," "requires that an extradited de-

fendant be tried for the crimes on which extradition was granted, and none other." *United States v. Saccoccia*, 58 F.3d 754, 766 (1st Cir.1995); *Fiocconi v. Attorney General of the United States*, 462 F.2d 475, 480 (2d Cir.1972). The principle of specialty rests on concerns of international comity.[5] It reflects an agreement between states that persons surrendered should not be subjected to indiscriminate prosecution by the receiving state. In order to effect this agreement, the specialty doctrine limits the requesting states power to prosecute a relator. *See United States v. Puentes*, 50 F.3d 1567, 1572 (11th Cir.1995).[6] A relator cannot be tried on counts for which extradition was not granted. *See United States v. Khan*, 993 F.2d 1368, 1373 (9th Cir .1993) (defendant's conviction for using a communication facility to facilitate a drug conspiracy was reversed because Pakistan did not grant extradition for this offense). Unlike the previous two concepts, specialty analysis is undertaken by the requesting state not the surrendering state. The requesting state must determine if the surrendering state would regard the prosecution as a breach of the extradition order. *See Fiocconi*, 462 F.2d at 480.[7]

### B. *Medina's Argument*

 Medina attacks his extradition on the theory that most of the crimes charged in the Indictment were not extraditable offenses. This question should be addressed to the surrendering state, not this Court. *See Johnson v. Browne*, 205 U.S. 309, 316, 27 S.Ct. 539, 540–41, 51 L.Ed. 816 (1907); *Casey v. Department of State*, 980 F.2d 1472, 1476 (D.C.Cir.1992); *United States v. Van Cauwenberghe*, 827 F.2d 424, 429 (9th Cir.1987); *McGann v. United States Board of Parole*,

---

5. Because specialty is based upon concerns of international comity, the surrendering country may waive its applicability. *See United States v. Fowlie*, 24 F.3d 1059, 1064 (9th Cir.1994).

6. The issue of whether or not a defendant has standing to assert a violation of the doctrine of specialty appears to have split the Circuit Courts of Appeals. *Compare United States v. Kaufman*, 874 F.2d 242, 243 (5th Cir.1989) (per curiam) (only a nation that is a party to a treaty may complain of a breach of the treaty) *with United States v. Levy*, 905 F.2d 326, 328 n. 1 (10th Cir.1990) (extradited individual has standing to

claim a violation of the rule of specialty); *Puentes*, 50 F.3d at 1572 (defendant has standing to allege a violation of the principle of specialty).

7. Medina's challenge does not implicate the doctrine of specialty because he currently faces trial on the same counts for which extradition was granted. All 58-counts of the indictment were presented to the Dominican Republic as offenses for which the United States sought extradition and the Dominican Republic granted Medina's extradition without exception. *See Extradition Decree*.

488 F.2d 39, 40 (3d Cir.1973) (per curiam). In *Johnson,* the Court held that a fugitive extradited on one charge could not be imprisoned on a conviction for a different charge, where the Canadian courts concluded that the charge was not an extraditable offense under the treaty in force between the two states. The Court stated "[w]hether the crime came within the provision of the treaty was a matter for the decision of the Dominion authorities, and such decision was final by the express terms of the treaty itself." *Johnson,* 205 U.S. at 316, 27 S.Ct. at 540–41. This decision has been interpreted to stand for the broader proposition that a foreign government's decision to extradite an individual in response to a request from the United States is not subject to review by United States courts.

In *McGann,* the court denied a habeas petition where the petitioner challenged his extradition on the ground that his parole violation was not an extraditable offense. The court stated that "the holding of *Johnson v. Browne,* 205 U.S. 309 [27 S.Ct. 539, 51 L.Ed. 816] ... precludes any review of the Jamaican court's decision as to the extraditable nature of the offense." *McGann,* 488 F.2d at 40. A similar result was reached in *Van Cauwenberghe.* There, the defendant had been extradited from Switzerland on wire fraud and related charges. He had unsuccessfully challenged his extradition in the Swiss courts, arguing that the charges were not extraditable offenses. The Ninth Circuit maintained that *Johnson* makes a broad statement concerning the deference accorded a surrendering country's extradition decision. *See Van Cauwenberghe,* 827 F.2d at 429. As a result, the court held that it should defer to the Swiss government's decision concerning the defendant's extraditability. *Johnson, McGann,* and *Van Cauwenberghe,* were all considered in *Casey,* where a fugitive in Costa Rica sought to enjoin the State Department from seeking his extradition to the United States. While the court's holding in *Casey* relied on the fact that Casey's challenge to his extradition had not been decided in the Costa Rican courts, the court proceeded to state that "[s]urely, a foreign court's holding as to what that country's criminal law provides should not lightly be second-guessed by an American court—if it is ever reviewable." *Casey,* 980 F.2d at 1477.

■ These decisions compel the conclusion that this Court may not review the Dominican Republic's decision to extradite Medina on the offenses listed in the 58–count Indictment. Prior to President Leonel Fernandez issuing his Extradition Decree, the United States submitted a formal request for extradition to the Government of the Dominican Republic. Included in that request was a certified copy of the 58–count Indictment as well as a 17–page affidavit of Special Agent Laurie A. Horne of the Bureau of Alcohol, Tobacco & Firearms, sworn to on May 2, 1997 ("Horne Affidavit"). Horne described the evidence which formed the factual basis of the charges against Medina. Based on these submissions the government of the Dominican Republic was fully appraised of the criminal charges that Medina would face in the United States.

Because the government of the Dominican Republic was fully aware of the charges, it was capable of making an informed judgment about whether or not the crimes alleged in the Indictment were extraditable offenses. In fact, the President of the Dominican Republic stated that the offenses charged were "equivalent in our penal legislation, to murder, attempted murder, drug trafficking, and criminal association." This statement captures the essence of the second method of determining whether an offense is extraditable. As described above, the second method requires that the acts supporting the charged offense be capable of sustaining a charge under the laws of the surrendering state, which charge must correspond to an offense listed in the Treaty. Additionally, the President explained

> [t]hat the current state of International relations, as well as the expansion criminal activity has experienced, oblige, in the context of a climate of cooperation and unity in the fight against crime, that options such as those granted ... be exercised with the greatest prudence, so that, without prejudice to the attributes of national sovereignty, the actions of the country con-

tribute to said fight, especially when dealing with infractions which by their nature are injurious to all humanity.

*See* Extradition Decree. This statement demonstrates the careful legal and political considerations which the government of the Dominican Republic engaged in when reaching its decision to extradite Medina. It is not within the province of this Court to second-guess the decision made by a sovereign nation.

Finally, the decree granting Medina's extradition for the criminal acts alleged, limits the terms of extradition so that "under no circumstances will the death penalty be imposed..." *See* Article 1. of the Extradition Decree. This statement supports the conclusion that the Dominican Republic imposed the limitation that it desired on Medina's prosecution following his extradition. In sum, the Dominican Republic was fully informed of the 58–counts of the pending Indictment and made a considered judgment to grant extradition, a judgment that should not be reviewed by a United States court.

### III. *Conclusion*

For the reasons stated above, Medina's motion to dismiss certain counts of the Indictment is denied.

SO ORDERED: