**UNITED STATES of America**

v.

**Alexander NOSOV, a/k/a "Sasha Dlinni," Vasiliy Ermichine, a/k/a "Vassya," a/k/a "Blondine," and Natan Gozman, a/k/a "Shmunka," Defendants.**

**No. S2 00 CR. 314(RLC).**

United States District Court,
S.D. New York.

July 31, 2001.

Mary Jo White, United States Attorney for the Southern District of New York, New York City, Robert B. Buehler, Assistant United States Attorney, Of Counsel, for the United States of America.

Nalven & Schacht, Astoria, NY, Alexei Schacht, Of Counsel, for Defendant Alexander Nosov.

Amsterdam & Branden, New York City, Valerie S. Amsterdam, Of Counsel, for Defendant Vasiliy Ermichine.

## OPINION

ROBERT L. CARTER, District Judge.

Defendant Alexander Nosov moves: to dismiss the indictment filed against him; to sever his trial from that of his co-defendants; for an order directing the government to provide the defendant with the identity of a particular witness and with additional discovery; and to allow him permission to join in motions made by co-defendants. Defendant Vasiliy Ermichine moves to suppress his post-arrest statements and joins in any motions filed by his co-defendants. With certain exceptions, which will be explained in greater detail below, the government opposes these motions.

## BACKGROUND

The government alleges that the defendants were all members of an organized crime group and that, in connection with their membership in that group, the defendants were involved with, *inter alia*, the kidnapping and murder of an individual named Sergei Kobozev. On March 27, 2000, a grand jury returned an indictment in this case that charged defendants Nosov and Natan Gozman in five counts with (i) kidnapping Kobozev in aid of racketeering, (ii) murdering Kobozev in aid of racketeer-

ing, (iii) conspiring to kidnap Kobozev, (iv) kidnapping Kobozev, and (v) using and carrying a firearm during and in relation to the aforementioned crimes.[1] In May, 2000, the United States government submitted a request to the German government for the extradition of Nosov based upon these charges.

On September 11, 2000, a grand jury returned a superseding indictment that was virtually identical to the first indictment. The only significant difference was the addition of Ermichine as a defendant in all counts. In December, 2000, the United States government was notified that the German government had agreed to extradite Nosov to stand trial in this country on the charges contained in the initial indictment. On May 2, 2001, the government obtained a second superseding indictment (the "S2 Indictment") that adds two racketeering charges against defendants Ermichine and Gozman. These new counts list four separate acts of racketeering. The murder and kidnapping of Kobozev are identified as one of the acts, while the other three acts consist of a kidnapping, an extortion, and a robbery. Defendant Nosov is not charged in either of these new counts.

*Defendant Nosov's Motions*

*(1) Nosov's Motion to Dismiss the Indictment or, in the Alternative, to Sever His Trial*

■ Nosov claims that because the S2 Indictment includes charges that were not contained in the indictment upon which he was extradited from Germany, the new indictment should be dismissed based on the "rule of specialty." According to the rule of specialty, an extradited defendant may only be tried for the crimes for which

---

1.  Defendant Gozman has not yet been arrest-
ed and remains a fugitive.

extradition was granted. *See Shapiro v. Ferrandina,* 478 F.2d 894, 905 (2d Cir. 1973) (Friendly, J.); *United States v. Medina,* 985 F.Supp. 397, 400 (S.D.N.Y.1997) (Scheindlin, J.). Nosov contends that the German government was unaware of the two supplemental counts contained in the S2 Indictment when it agreed to his extradition, and that the indictment, therefore, should be dismissed.

Nosov's argument fails for two reasons. As a preliminary matter, it appears that he lacks standing to make this petition. Nosov is correct that the circuit courts are split as to whether a defendant, as opposed to the country from which he was extradited, may invoke the specialty doctrine.[2] *Compare United States v. Kaufman,* 874 F.2d 242, 243 (5th Cir.1989) (holding that "only an offended nation can complain about the purported violation of an extradition treaty"); *and Demjanjuk v. Petrovsky,* 776 F.2d 571, 584 (6th Cir.1985) (same), *vacated on other grounds,* 10 F.3d 338 (6th Cir.1993); *with United States v. Najohn,* 785 F.2d 1420, 1422 (9th Cir.1986) (holding that "the person extradited may raise whatever objections the rendering country might have"); *and United States v. Levy,* 905 F.2d 326, 328 n. 1 (10th Cir. 1990) (same); *and United States v. Puentes,* 50 F.3d 1567, 1572 (11th Cir.1995) (same). Decisions from the Second Cir-

cuit—the binding authority for this court— suggest that a defendant would not have standing to invoke the rule of specialty. *See United States v. Reed,* 639 F.2d 896, 902 (2d Cir.1981) (holding that "absent protest or objection by the offended sovereign, [a defendant] has no standing to raise violation of [an extradition treaty] as an issue"); *Shapiro,* 478 F.2d at 906 (noting that "[a]s a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused").

■■■ The court, however, need not consider this issue in great detail, because even if Nosov had standing, his argument would fail. The rule of specialty is only violated if a superseding indictment charges new "separate offenses" against the defendant. *United States v. Sturtz,* 648 F.Supp. 817, 819 (S.D.N.Y.1986) (Stanton, J.). The two new counts contained in the S2 Indictment implicate only Ermichine and Gozman.[3] In other words, Nosov does not face any charges of which the German government was not aware when it agreed to his extradition.

■■■ Nosov also moves to sever his trial from the trial of defendant Ermichine based upon (1) the rule of specialty and (2) the possible delay resulting from the death

---

**2.** An old opinion of the United States Supreme Court suggests that a defendant would have standing to raise the specialty doctrine. In *United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), the Court characterized the rule of specialty as a "right conferred upon persons brought from a foreign country ...," to stand trial in the United States. *Id.* at 424, 7 S.Ct. 234. This pronouncement, however, apparently has not been viewed as determinative of the issue as is evidenced by the split in decisions among the circuit courts.

**3.** Nosov is mentioned as a member of the criminal enterprise referenced in the racke-

teering charges contained in the two new counts included in the S2 Indictment. Ermichine and Gozman, however, are the only defendants named in the racketeering violation and the overt acts alleged in those counts. Additionally, in describing the activities of the criminal enterprise in the racketeering acts with which Nosov is charged, the S2 Indictment adds allegations of assault and interstate transportation of stolen property. Nevertheless, these additions do not alter the substance of these charges as they relate to Nosov, i.e., murder and kidnapping in aid of racketeering.

penalty review process for Ermichine. The court has broad discretion in determining whether severance is appropriate. *See Zafiro v. United States*, 506 U.S. 534, 541, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); Rule 14, F.R.Crim. P. As for his first argument, Nosov contends that, in addition to requiring that he only be charged with crimes that were included in the extradition materials, the rule of specialty also demands that his trial not be tainted by the inclusion of co-defendants being tried for additional crimes. Nosov, however, cites no authority which stands for the position that his extradition entitles him to greater deference in a motion for severance. Indeed, the specialty doctrine "has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state ...." *United States v. Flores*, 538 F.2d 939, 944 (2d Cir.1976) (holding that evidence of certain acts that could not be prosecuted as independent crimes because of an extradition agreement, could nevertheless be admissible as evidence of a conspiracy).

■ Since the specialty doctrine does not affect the evidentiary rules of this court, evidence of the crimes alleged to have been committed by Ermichine and Gozman in counts one and two of the S2 Indictment (the new counts) could be admissible even in a trial of Nosov alone. Nosov is accused of being a member of an organized crime syndicate and with committing a murder and kidnapping to increase and maintain his position in the criminal organization, in violation of 18 U.S.C. § 1959(a)(1). Therefore, evidence of the crimes committed by other members of the criminal enterprise could be admissible against Nosov because it would help demonstrate the existence and nature of the group. *See United States v. Diaz*, 176 F.3d 52, 79 (2d Cir.1999); *United States v. Miller*, 116 F.3d 641, 682 (2d Cir.1997);

*United States v. Brady*, 26 F.3d 282, 286–88 (2d Cir.1994). Because this evidence probably would be appropriate even in a separate trial of Nosov, his argument that he would be prejudiced by the inclusion of such evidence as it relates to the new charges against his co-defendants is without merit.

■ The court appreciates the risk of prejudice inherent in a single trial of multiple defendants. However, there is also "a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537, 113 S.Ct. 933. Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Id.* (quoting *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Furthermore, as explained above, severance is even less appropriate in a racketeering case where evidence of other co-defendants' criminal conduct would be admissible even if the defendant was tried separately. *Cf. United States v. DiNome*, 954 F.2d 839, 845 (2d Cir.1992) (noting that joinder is generally appropriate in a conspiracy case).

Finally, Nosov is charged with participating in a rather gruesome murder and kidnapping. The new allegations of kidnapping, extortion and robbery contained in the additional counts against Ermichine and Gozman do not involve grave physical harm to the victims. Thus, while they are certainly serious, the charges are not of the same violent character as those faced by Nosov. Accordingly, proof of these charges against his co-defendants should have no adverse effect on Nosov. Moreover, the court is convinced that an appropriate limiting instruction to the jury to assess the evidence against each defendant separately will provide adequate protection against any unfair prejudice involved in

the defendants' joint trial. *See Zafiro*, 506 U.S. at 539, 113 S.Ct. 933.

■ Nosov also moves to sever his trial from that of his co-defendants asserting that the government's consideration of whether to seek the death penalty for Ermichine will delay his trial. A trial date in this case has been set for September 17, 2001. At a conference held on June 11, 2001, both the government and Nosov represented that they were satisfied with this trial date. The Department of Justice will apparently make its decision regarding whether to pursue the death penalty before August 1, 2001. (Gov.'s Mem. in Opp. to Defs.' Pre-Trial Motions at 33.) There is no present indication, therefore, that the trial will need to be postponed beyond the agreed upon September 17, 2001 trial date because of the government's death penalty decision.

*(2) Nosov's Motion for the Identity of a Government Witness*

The government informed counsel for Nosov by letter that a witness was shown certain photographic arrays and that the witness identified Ermichine and Gozman, but did not identify Nosov. Nosov requests the identity of this witness, arguing that the witness's inability to identify him constitutes exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny.

■ The court notes at the outset, that it is reluctant to order the disclosure of the identities of witnesses in a case such as this, involving an alleged organized crime syndicate. Such disclosure increases the likelihood of subornation of perjury and obstruction of justice. *See, e.g., United States v. Perez*, 940 F.Supp. 540, 552 (S.D.N.Y.1996) (Sweet, J.); *United States v. Taylor*, 707 F.Supp. 696, 703 (S.D.N.Y. 1989) (Kram, J.).

■ Furthermore, the government has informed the court that it intends to call the witness in question in the upcoming trial of Nosov. Nosov will therefore be provided, pursuant to 18 U.S.C. § 3500, with relevant statements made by the witness and will be able to elicit on cross-examination that the witness was unable to identify him. This information—rather than full disclosure of the witness's identity—is generally sufficient to allow the preparation of an adequate defense. *See, e.g., United States v. Manley*, 781 F.Supp. 296, 297–98 (S.D.N.Y.1992) (Patterson, J.).

■ Nevertheless, the fact that some of the information Nosov seeks will be produced as 3500 material, does not obviate the government's *Brady* obligations. Nosov has made a specific request for information that he reasonably believes to be exculpatory, and the court has an affirmative obligation to determine whether the material is, in fact, subject to disclosure under *Brady*. *See United States v. Kiszewski*, 877 F.2d 210, 215–16 (2d Cir. 1989) (holding that, following a specific request by the defendant, *in camera* review by the district court of a witness's personnel file was required to determine whether it contained *Brady* material).

■ The government is correct that a witness's inability to identify a suspect—as opposed to identifying someone other than the defendant—is not necessarily exculpatory information. *See United States v. Tramunti*, 500 F.2d 1334, 1349 (2d Cir. 1974); *United States v. Jones*, 648 F.Supp. 225, 240 n. 11 (S.D.N.Y.1986) (Haight, J.), *rev'd in part on other grounds sub nom. United States v. Blackmon*, 839 F.2d 900 (2d Cir.1988). There may be certain circumstances, however, where nonidentification by a witness may benefit the defendant's cause as much as a misidentification. For example,

if a witness was present at the scene of a crime and observed all of the participants, his inability to identify the defendant may be strong evidence of the defendant's innocence.

Therefore, the government shall submit to the court, for *in camera* review, a detailed description of the witness's basis of knowledge for the identification. Furthermore, the government should also specify why it believes the witness's safety, or the prosecution of this case, will be compromised by the disclosure of the witness's identity. The government should make this submission no later than the close of business on August 10, 2001. The court will then make a determination as to whether any of this information constitutes *Brady* material.

*(3) Nosov's Motion for Additional Discovery*

Nosov also moves for an order requiring the government to disclose tape recordings of conversations of certain alleged co-conspirators. This motion is moot because the government has agreed to provide him with these tapes.

*(4) Nosov's Remaining Miscellaneous Motions*

Nosov moves for permission to join in motions made by co-defendants. In a multi-defendant trial, it is the court's practice to automatically provide each defendant with the benefit of all the defenses and arguments raised by co-defendants, unless

the defendant expressly indicates otherwise.

*Defendant Ermichine's Motions*

*(1) Ermichine's Motion to Suppress Post–Arrest Statements* [4]

Ermichine moves to suppress his post-arrest statements, arguing that he had not been properly advised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and its progeny, when he made them. There is presently no need for an evidentiary hearing to determine the sufficiency of Ermichine's *Miranda* challenge. The government has represented that it will not introduce these statements in its case in chief.[5]

## CONCLUSION

Defendant Nosov's motion to dismiss the indictment or, in the alternative, to sever his trial from his co-defendants, is denied. Regarding Nosov's motion for the identity of a particular government witness, the government shall submit, for the court's *in camera* review, the information outlined above describing the witness. Nosov's motion for additional discovery is moot. Defendant Ermichine's motion to suppress certain statements is also moot.

**IT IS SO ORDERED.**

---

4. Ermichine also moves to join in "any motion of his co-defendants that is not inconsistent with his position on these motions." However, he has not provided an adequate factual predicate to demonstrate that any of Nosov's arguments would apply to him.

5. Ermichine does not argue that the statements were made involuntarily in violation of his rights under the due process clause of the fifth amendment and his affirmation submitted in connection with this motion does not suggest that they were. Thus, even assuming

they were *Miranda* defective, his statements could still be admissible, for example, as impeachment material during cross-examination. *See Harris v. New York*, 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971). It should be noted that if the government decides to alter its strategy and wishes to introduce the statements in its direct case, it should provide both the court and the defense with timely notice so that Ermichine may renew his motion without delaying the trial.